679 F.2d 196
 Norman ASHCROFT, dba Querino Canyon Superette; Clyde A.
Baker, dba Baker Chevron; Everett Edmunds & Wayne Harris,
dba Ganado Chevron; Richard Harris, dba Two Story Trading
Post; Mrs. Lester (Anna) Lee; Jim McAvoy, dba St. Michaels
Towing; Dwight McGee, dba Aneth Trading Post; Armond Ortega,
dba Indian Ruins; Freddy Slatton, dba Tomahawk Indian Store;
Brady Smithson, dba Burnt Water Trading Post; Homer
Thompson, dba Tuller Cafe; and Arthur Keenan, Plaintiffs/Appellees,
v.
The UNITED STATES DEPARTMENT OF the INTERIOR, The Honorable
Cecil D. Andrus, Secretary of the Department of Interior;
and The Bureau of Indian Affairs, an agency of the United
States of America and a Division of the Department of
Interior, Defendants/Appellants.
ATKINSON'S LTD. OF ARIZONA, an Arizona corporation, dba
Gilbert Ortega's Cameron Trading Post, Plaintiffs/Appellees,
v.
The UNITED STATES of America and The Honorable Cecil D.
Andrus, Secretary of the Interior, Defendants/Appellants.
 No. 81-5381.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted March 5, 1982.
Decided June 9, 1982.
 
 Maria A. Iizuka, Washington, D. C., argued, for defendants-appellants; Dirk D. Snel, Washington, D. C., on brief.
 William J. Darling, Eaves & Darling, David L. Norvell, Albuquerque, N. M., for plaintiffs-appellees.
 Appeal from the United States District Court for the District of Arizona.
 Before SNEED, POOLE and BOOCHEVER, Circuit Judges.
 POOLE, Circuit Judge:
 
 
 1
 This is an appeal from an order of the United States District Court for the District of Arizona enjoining the government from enforcing against appellees' businesses regulations enacted pursuant to the Indian Trader Statutes, 25 U.S.C. §§ 261-264.
 
 
 2
 Appellees are owners or operators of retail businesses on fee patent land within the exterior boundaries of the Navajo Reservation. Most of the businesses are general stores, some of which are located on main highways. These businesses cater to the tourist trade, but a small portion of their sales are made to reservation Indians.
 
 
 3
 The Bureau of Indian Affairs (the BIA) notified appellees that they were required to comply with the regulations. Thereafter the BIA issued cease and desist orders, and closed one of appellees' businesses. Appellees brought this action seeking injunctive and declaratory relief. On cross-motions for summary judgment, the district court held that the regulations did not apply to businesses on fee patent land located within the exterior boundaries of the reservation. Ashcroft v. Department of Interior, 513 F.Supp. 595 (D.Ariz.1981). We disagree and accordingly reverse.
 
 
 4
 The Indian Trader Statutes were enacted to protect the Indians from unethical traders' exploitation of an essentially captive consumer market. See Rockbridge v. Lincoln, 449 F.2d 567 (9th Cir. 1971). Section 261 authorizes the Commissioner of Indian Affairs (Commissioner) to appoint "traders to the Indian tribes" and to promulgate rules specifying the kind, quantity and prices of goods to be sold to the Indians. Under § 262, persons "desiring to trade with the Indians on any Indian reservation" must comply with regulations enacted by the Commissioner for the protection of the Indians.
 
 
 5
 In 1971, this court found that the Commissioner's authority to regulate Indian traders was not wholly discretionary and that the district court therefore had jurisdiction over a class action brought by the Navajo Indians to compel the Commissioner to adopt and enforce regulations governing Indian traders. Rockbridge v. Lincoln, 449 F.2d 567. In 1975, the Secretary of the Interior enacted regulations governing "Licensed Indian Traders" and "Business Practices on the Navajo, Hopi and Zuni Reservations." 25 C.F.R. Parts 251 and 252.
 
 
 6
 The wording of the regulations is arguably ambiguous. Section 252.3(1) describes "reservation business" as any business "within the exterior boundaries" of the Navajo Reservation. Section 252.2 provides, however, that the regulations in Part 252 apply to persons engaged in business "on the reservation." Appellees argue that fee land within reservation boundaries is not "on the reservation."
 
 
 7
 "(S)tatutes passed for the benefit of dependent Indian tribes ... are to be liberally construed, doubtful expressions being resolved in favor of the Indians." Bryan v. Itasca County, 426 U.S. 373, 392, 96 S.Ct. 2102, 2112, 48 L.Ed.2d 710 (1976). See Rockbridge v. Lincoln, 449 F.2d at 571. And where an administrative regulation is ambiguous, the agency interpretation is controlling unless "plainly erroneous or inconsistent with the regulation." United States v. Larionoff, 431 U.S. 864, 872, 97 S.Ct. 2150, 2155, 53 L.Ed.2d 48 (1977); United States v. Hells Canyon Guide Service, Inc., 660 F.2d 735, 738 (9th Cir. 1981). See Confederated Bands & Tribes v. Washington, 550 F.2d 443, 447 n.9 (9th Cir. 1977). We hold that the Department of the Interior's interpretation of the regulations as applicable to non-Indian fee lands within reservation borders is neither plainly erroneous nor inconsistent with the language of the regulations.
 
 
 8
 The district court held that appellees' businesses were not "reservation businesses" within 25 C.F.R. § 252.3(1) and that businesses on fee patent land within the exterior boundaries of the reservation were not on the reservation.[1] Its ruling rests on a finding that the proper scope of the regulations was limited to businesses which were on lands subject to sovereign rights of the tribe, and that these rights extend only to tribal or trust lands.[2] Ashcroft, 513 F.Supp. at 597-98. This conclusion is unfounded.
 
 
 9
 A tribe retains some elements of sovereignty over all land within reservation boundaries, absent the exclusive jurisdiction of another tribe or that of the federal government (such as the establishment of a military base). With respect to non-Indian fee land within the reservation, the tribe retains sovereign power to the extent necessary to protect tribal self-government or control internal relations. Montana v. United States, 450 U.S. 544 at 564, 101 S.Ct. 1245, 1258, 67 L.Ed.2d 493. This includes the power to regulate commerce with the tribe or its members within reservation boundaries.
 
 
 10
 Indian tribes retain inherent sovereign power to exercise some forms of civil jurisdiction over non-Indians on their reservations, even on non-Indian fee lands. A tribe may regulate, through taxation, licensing, or other means, the activities of non-members who enter into consensual relationships with the tribe or its members, through commercial dealings, contracts, leases or other arrangements. A tribe may also retain inherent power to exercise civil authority over the conduct of non-Indians on fee lands within its reservation when that conduct threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe.
 
 
 11
 Id. at 565-66 (citations omitted); Cardin v. De la Cruz, 671 F.2d at 366. See also, Merrion v. Jicarilla Apache Tribe, --- U.S. ----, 102 S.Ct. 894 at 903, 905-07, 71 L.Ed.2d 21. Kennerly v. District Court, 400 U.S. 423, 91 S.Ct. 480, 27 L.Ed.2d 507 (Montana has no civil jurisdiction over fee land within the reservation). This inherent tribal sovereign power over non-Indian land renders the BIA's determination that such lands are "on the reservation" for purposes of the Indian Trader Statutes' regulations, both reasonable and consistent with the regulatory language.
 
 
 12
 Of equal importance is the fact that application of the regulations to fee land within the reservation is necessary to effect legislative intent. In Moe v. Confederated Salish and Kootenai Tribes, the Supreme Court held that Montana could not tax fee land within a reservation because "checkerboard jurisdiction," a result "contrary to the intent embodied in the existing federal statutory law of Indian jurisdiction," would result. 425 U.S. 463 at 478, 96 S.Ct. 1634 at 1643, 48 L.Ed.2d 96 (citing Seymour v. Superintendent, 368 U.S. 351, 82 S.Ct. 424, 7 L.Ed.2d 346 (1962)). The effect of a holding that scattered tracts within the Navajo Reservation are not a part of the reservation for purposes of these regulations would be to create the very problem Moe sought to avoid. Moreover, to the extent that a contrary finding would encourage uncontrolled trader activities on fee lands within the reservation, the salutary goal of the statute which is to protect Indians from the sharp practices of unregulated traders would be thwarted.[3]
 
 
 13
 We therefore reverse the judgment of the district court and hold that businesses conducted on non-Indian fee land within the exterior boundaries of the Navajo Reservation are subject to the regulations at 25 C.F.R. Parts 251 and 252 enacted pursuant to the Indian Trader Statutes.
 
 
 14
 REVERSED.
 
 
 
 [1]
 The parties stipulated that appellees' lands "either existed before the creation of the Reservation or were withdrawn from the reservation after its creation." Ashcroft, 513 F.Supp. at 598. This would appear to mean simply that the tracts are neither tribal nor trust property. There is no indication in the record that the tracts in question differ in any way from other non-Indian fee land within a reservation. See, e.g., United States v. Mazurie, 419 U.S. 544, 95 S.Ct. 710, 42 L.Ed.2d 706 (1975); Cardin v. De la Cruz, 671 F.2d 363 (9th Cir. 1982); Buster v. Wright, 135 F. 947 (8th Cir. 1905), appeal dismissed, 203 U.S. 599, 27 S.Ct. 777, 51 L.Ed. 334 (1906)
 
 
 [2]
 The district court found indicia of the regulations' scope in the regulations themselves. Title 25 C.F.R. § 252.11 provides:
 (a) The regulations in this Part do not preclude the Hopi, Navajo, or Zuni tribal councils from assessing and collecting such fees or taxes as they may deem appropriate from reservation businesses.
 (b) Nothing in the regulations of this Part may be construed to preclude tribal enforcement of these regulations or consistent tribal ordinances.
 The district court found this to be evidence of the regulations' application solely to tribal or trust property. This premise is flatly contradicted in Montana v. United States, 450 U.S. 544, 565, 101 S.Ct. 1245, 1258, 67 L.Ed.2d 493 (1981). Indian tribes retain inherent sovereign power to act in accordance with the authority recognized in this regulation with respect to all land within the exterior boundaries of the reservation whether it be fee patent, tribal or trust property. Id. The district court also considered 25 C.F.R. § 252.22 indicia that non-Indian fee land was exempt from the regulations:
 No licensee may lease, sublet, rent or sell any building that the licensee occupies for any purpose to any person without the approval of the Commissioner and the consent of the tribe.
 We disagree. In light of 25 U.S.C. § 262, requiring a would-be licensee to establish that he is a "proper person to engage in such trade," we find this regulation simply provides that the approval of the Commissioner and the tribe is necessary for a transfer of a licensed business to effect a transfer of the license.
 A finding that fee land within reservation boundaries is in fact "on the reservation" is directly supported by the language of 25 C.F.R. § 251.11 which provides:
 The license period shall correspond to the period of the lease or permit held by the licensee on restricted Indian land except that where the proposed licensee is the owner... (of) the land on which the business is to be conducted, the license period shall be fixed by the Commissioner. ...
 Part 251 applies to "(a)ny person other than an Indian of the full blood." 25 C.F.R. § 251.3. Thus, this regulation suggests the regulations' general application to non-Indian fee land within the reservation.
 
 
 [3]
 We attach no significance to the fact that only a small portion of appellees' sales are made to reservation Indians. The regulations expressly require the licensing of all "reservation businesses", businesses located within the reservation borders. 25 C.F.R. §§ 252.3(1), .5(a). This is within the Interior Department's statutory authority under §§ 261 and 262. See Central Machinery Co. v. Arizona State Tax Commission, 448 U.S. 160, 100 S.Ct. 2592, 65 L.Ed.2d 684 (sale of eleven tractors falls within the Indian Trader Statutes); United States ex rel. Hornell v. One 1976 Chevrolet Station Wagon, 585 F.2d 978 (10th Cir. 1978) (sale of one automobile violated § 264 of the Trader Statutes)