725 F.2d 572
 TENNECO OIL COMPANY, Plaintiff-Appellant,
v.
The SAC AND FOX TRIBE OF INDIANS OF OKLAHOMA, John R.
Thorpe, Gaylon R. Franklin, Henrietta Mamie
Massey, Thomas Morris, Jr., and Hazel R.
Williamson, Defendants-Appellees,
The United States Department of the Interior and James G.
Watt, Secretary, United States Department of the
Interior, Defendants.
 No. 83-1061.
 United States Court of Appeals,
Tenth Circuit.
 Jan. 17, 1984.
 
 Stanley L. Cunningham, Oklahoma City, Okl. (John N. Hermes and Steven W. Bugg, Oklahoma City, Okl., with him on the brief, McAfee & Taft, P.C., James A. Hannah and Linda M. Harris, Oklahoma City, Okl., of counsel), for plaintiff-appellant.
 F. Browning Pipestem, Norman, Okl. (G. William Rice, Norman, Okl., with him on the brief), for defendants-appellees.
 Before SETH, Chief Judge, McKAY, Circuit Judge, and BRATTON, District Judge*.
 PER CURIAM.
 
 
 1
 The Sac and Fox Tribe of Indians (the Tribe) issued oil and gas leases for trust lands. The plaintiff Tenneco Oil Company subsequently acquired an interest in one of these leases. The lease provides that its terms will be subject to and governed by federal law. Almost fifty years after the issuance of the original lease, the Tribe enacted several ordinances purporting to impose certain licensing, organizational and taxation requirements on Tenneco as a lessor. The Tribe submitted these ordinances for review by the Bureau of Indian Affairs, and was informed that formal federal approval of the ordinances was not necessary for them to be valid.
 
 
 2
 The Tribe notified Tenneco that a petition for cancellation of Tenneco's lease had been submitted to the Tribe's Business Committee, in accordance with the procedure set forth in the newly enacted Sac and Fox Mineral Leasing Act. Tenneco did not attempt to obtain a hearing before the Business Committee, but instead filed suit in federal court requesting declaratory and injunctive relief. Tenneco argued that the tribal ordinances were unconstitutional, or were an invalid exercise of Indian sovereignty over non-Indians, or were preempted by federal regulation of oil and gas leases on Indian land.
 
 
 3
 The Tribe filed a motion to dismiss, asserting sovereign immunity and alleging that no federal question had been raised. The district court granted the motion and Tenneco appeals.
 
 
 4
 The fact that Indian tribes enjoy limited sovereign immunity from suit is well-established. Puyallup Tribe v. Washington Game Dept., 433 U.S. 165, 97 S.Ct. 2616, 53 L.Ed.2d 667; Turner v. United States, 248 U.S. 354, 39 S.Ct. 109, 63 L.Ed.2d 291. In the case before us the Tribe has not chosen to waive that immunity. Compare Merrion v. Jicarilla Apache Tribe, 455 U.S. 130, 102 S.Ct. 894, 71 L.Ed.2d 21. Several of the tribal officers, however, who are members of the Tribe's Business Committee, are named defendants. Tenneco argues that the sovereign immunity of the Tribe cannot extend to its officers. This proposition was the basis for jurisdiction in Santa Clara Pueblo v. Martinez, 436 U.S. 49, 98 S.Ct. 1670, 56 L.Ed.2d 106. The Tribe attempts to circumvent this precedent by suggesting that to permit suit against tribal officers would vitiate the doctrine of sovereign immunity. The Tribe argues that a sovereign can only act through its agents and that to permit a suit against these agents would permit a suit against the sovereign in effect, even if not in name. This reasoning has been followed in cases where the Tribe's power to perform the action at issue was unquestioned. See, e.g., Kenai Oil and Gas, Inc. v. Dept. of Interior, 522 F.Supp. 521 (D.Utah), aff'd and remanded, 671 F.2d 383 (10th Cir.).
 
 
 5
 The situation is different, however, when the law under which the official acted is being questioned. State of Wisconsin v. Baker, 464 F.Supp. 1377 (W.D.Wis.). When the complaint alleges that the named officer defendants have acted outside the amount of authority that the sovereign is capable of bestowing, an exception to the doctrine of sovereign immunity is invoked. Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628. If the sovereign did not have the power to make a law, then the official by necessity acted outside the scope of his authority in enforcing it, making him liable to suit. Any other rule would mean that a claim of sovereign immunity would protect a sovereign in the exercise of power it does not possess. As the Larson Court stated of cases involving unconstitutional statutes:
 
 
 6
 "[T]he conduct against which specific relief is sought is beyond the officer's powers and is, therefore, not the conduct of the sovereign."
 
 
 7
 This exception to the protections of sovereign immunity is especially appropriate in Indian law cases. See Babbitt Ford, Inc. v. Navajo Indian Tribe, 519 F.Supp. 418 (D.Ariz.). In Santa Clara Pueblo v. Martinez, 436 U.S. 49, 98 S.Ct. 1670, 56 L.Ed.2d 106, for example, had the claim of sovereign immunity prevailed as to the individual defendants as well as to the Tribe, then the interpretation of the Indian Civil Rights Act, 25 U.S.C. Secs. 1301-1341, would have been left only to tribal courts. Thus following Santa Clara Pueblo we hold that the named tribal officials are not protected by the Tribe's immunity, and the suit may proceed against them.
 
 
 8
 The presence or absence of federal question jurisdiction is to some extent tied to the sovereign immunity issue. In a recent case construing the Foreign Sovereign Immunities Act, 28 U.S.C. Sec. 1330, the Supreme Court observed that in cases involving a sovereign other than the United States "the primacy of federal concerns is evident" because of Congress' plenary power over foreign relations. Verlinden B.V. v. Central Bank of Nigeria, --- U.S. ---- at ----, 103 S.Ct. 1962 at 1971, 76 L.Ed.2d 81.
 
 
 9
 The analogy to Indian law is clear. It was recognized early that Congress had plenary power to determine relations with the Indian tribes and the extent of Indian sovereignty over non-Indians. Talton v. Mayes, 163 U.S. 376, 16 S.Ct. 986, 41 L.Ed. 196. An inquiry into whether Congress has in fact limited tribal sovereignty in a given case necessarily triggers federal concerns. See Merrion v. Jicarilla Apache Tribe, 455 U.S. 130, 102 S.Ct. 894, 71 L.Ed.2d 21. The test for the validity of an exercise of tribal power is whether it goes "beyond what is necessary to protect tribal self-government or to control internal relations," Montana v. United States, 450 U.S. 544 at 564, 101 S.Ct. 1245 at 1257, 67 L.Ed.2d 493, see United States v. Wheeler, 435 U.S. 313, 98 S.Ct. 1079, 55 L.Ed.2d 303, or trespasses upon "overriding interests of the National Government." Washington v. Confederated Tribes, 447 U.S. 134 at 153, 100 S.Ct. 2069 at 2081, 65 L.Ed.2d 10. Manifestly, measuring the interests of the National Government poses a federal question. Further, similarly to the issue of sovereign immunity discussed above, to leave the question of the extent of Indian sovereignty exclusively to tribal courts would not further the national purpose and interests. Congress could not have intended such a result.
 
 
 10
 The Tribe argues that federal questions about the validity of the tribal ordinance arise only in defense to the Tribe's attempted enforcement and cannot be the basis for federal jurisdiction. We disagree. In Oneida Indian Nation v. County of Oneida, 414 U.S. 661, 94 S.Ct. 772, 39 L.Ed.2d 73, the Supreme Court held that because Indian title to land could be terminated only by federal act or consent, even a simple state law possessory action could be the basis for federal question jurisdiction. A similar analysis applies to the assertion of Indian sovereignty when directed against non-Indians. Because such power is circumvented and defined by federal law a federal question is raised necessarily by the attempt to exercise it. City of Sault Ste. Marie, Mich. v. Andrus, 458 F.Supp. 465 (D.D.C.). See Oliphant v. Suquamish Indian Tribe, 435 U.S. 191, 98 S.Ct. 1011, 55 L.Ed.2d 209.
 
 
 11
 Several other issues raised here establish federal question jurisdiction. For example, Tenneco has argued that the Tribe's regulations are contrary to the principles laid down in Oliphant v. Suquamish Indian Tribe, 435 U.S. 191, 98 S.Ct. 1011, 55 L.Ed.2d 209. As the Ninth Circuit has stated in Cardin v. De La Cruz, 671 F.2d 363 at 365, these principles
 
 
 12
 "are not drawn from any specific statute or treaty, but rather form a part of federal common law. Since this action thus arises under federal common law, it falls within the general federal-question jurisdiction conferred by Sec. 1331." (Citation omitted.)
 
 
 13
 Federal question jurisdiction also arises by the terms of both the lease and the ordinances at issue. The lease expressly provides that:
 
 
 14
 "This lease shall be subject to the regulations of the Secretary of the Interior now or hereafter in force relative to such leases, all of which regulations are made a part and condition of this lease ....
 
 
 15
 ....
 
 
 16
 "This lease is made and accepted subject to existing law and any laws hereafter enacted by Congress as to the said lands, also to the regulations relative to such leases heretofore or hereafter prescribed by the Secretary of the Interior ...."
 
 
 17
 R. Vol. II, at 25.
 
 
 18
 No similar provision makes the terms of the lease subject to laws enacted by the Sac and Fox, and Tenneco suggests that these provisions made federal law the exclusive regulation over the leases. Further, the Tribal Mineral Leasing Act itself defers to and recites that it is intended to supplement the supervisory power of the Secretary of the Interior. Sac and Fox Mineral Leasing Act of 1982, Sec. 134. Clearly, both parties intended that the structure of federal law be the final arbitrator in all disputes concerning the lease. We hold that federal question jurisdiction is present.
 
 
 19
 Tenneco urges us to proceed to the merits of this case and determine the validity of the tribal ordinances. We decline to do this as the Tribe has not yet filed an answer to the complaint or had an opportunity to present compulsory counterclaims.
 
 
 20
 It is the judgment of this court that the judgment of the district court be reversed, and the cause is remanded for further proceedings in accordance with this opinion.
 
 McKAY, Circuit Judge, concurring:
 
 21
 While I concur in the court's opinion, I add this concurring statement to emphasize my understanding of the narrow scope of the court's ruling.
 
 
 22
 The individual defendants in this case are being sued in their representative capacity as officers of the tribe. As such they do not enjoy absolute immunity from suit. Santa Clara Pueblo v. Martinez, 436 U.S. 49, 59, 98 S.Ct. 1670, 1677, 56 L.Ed.2d 106 (1978). However, every suit that seeks to enjoin an officer acting in his representative capacity raises the question of whether relief granted against the officer will not in effect grant relief against the sovereign because the sovereign can only act through its agents. Larson v. Domestic & Foreign Corp., 337 U.S. 682, 688, 69 S.Ct. 1457, 1460, 93 L.Ed. 1628 (1949). If such would be the result "then the suit is barred ... because it is, in substance, a suit against the [sovereign] over which the court, in the absence of consent, has no jurisdiction." Id.
 
 
 23
 The narrow exception to that rule is invoked, as noted by the court, "[w]hen the complaint alleges that the named officer defendants have acted outside the amount of authority that the sovereign is capable of bestowing."[1] Ante at 574. Were it not for such an allegation in this case, the sovereign immunity of the tribe would extend to its officers.
 
 
 24
 The exception enumerated above, however, has no application to those cases where plaintiffs claiming a breach of a common law duty attempt to avoid sovereign immunity by suing the officers of the sovereign. Merely being wrong or otherwise actionable does not take an action outside the scope of immunity. As the Supreme Court held in Larson v. Domestic & Foreign Corp.,
 
 
 25
 [I]f the actions of an officer do not conflict with the terms of his valid statutory authority, then they are the actions of the sovereign, whether or not they are tortious under general law, ... [furthermore,] the action itself cannot be enjoined or directed, since it is ... the action of the sovereign.
 
 
 26
 337 U.S. at 695, 69 S.Ct. at 1464.
 
 
 27
 Similarly, a plaintiff claiming breach of contract cannot avoid a tribe's sovereign immunity by suing tribal officers. Kenai Oil and Gas v. Department of Interior, 522 F.Supp. 521, 531 (D.Utah 1981), aff'd and remanded 671 F.2d 383 (10th Cir.1982).
 
 
 28
 Inasmuch as the decision on remand will turn on the amount of authority that the sovereign is capable of bestowing, it is important to note several recent decisions of the Supreme Court which outline the attributes and scope of tribal sovereignty.
 
 
 29
 In Montana v. United States, 450 U.S. 544, 101 S.Ct. 1245, 67 L.Ed.2d 493 (1981), the Court addressed the issue of the extent to which a tribe could exercise civil authority over non-Indians on lands owned in fee by non-Indians located within the bounds of their reservation. Although the Court held that the tribe could not prohibit non-Indians from hunting or fishing on the fee lands, the Court noted that Indian tribes have
 
 
 30
 inherent sovereign power to exercise some forms of civil jurisdiction over non-Indians on their reservations, even on non-Indian fee lands. A tribe may regulate, through taxation, licensing, or other means, the activities of nonmembers who enter consensual relationships with the tribe or its members through commercial dealing, contracts, leases, or other arrangements. A tribe may also retain inherent power to exercise civil authority over the conduct of non-Indians on fee lands within its reservation when that conduct threatens or has some direct effect on the political integrity, economic security or the health or welfare of the tribe.
 
 
 31
 450 U.S. at 565-66, 101 S.Ct. at 1258 (citations omitted).
 
 
 32
 Less than a year later in Merrion v. Jicarilla Apache Tribe, 455 U.S. 130, 102 S.Ct. 894, 71 L.Ed.2d 21 (1982), the Court amplified its treatment of tribal authority to tax noting that "[t]he power to tax is an essential attribute of Indian sovereignty because it is a necessary instrument of self-government and territorial management." Id. at 901. Furthermore, the Court reiterated that "[o]nly the Federal Government may limit a tribe's exercise of its sovereign authority." Id. at 907.
 
 
 33
 New Mexico v. Mescalero Apache Tribe, --- U.S. ----, 103 S.Ct. 2378, 76 L.Ed.2d 611 (1983), is the Court's most recent pronouncement on tribal sovereignty and self-government. In Mescalero the Court held that the State of New Mexico could not enforce its hunting and fishing regulations within the boundaries of the reservation. In arriving at that decision, the Court emphasized that
 
 
 34
 both the tribes and the Federal Government are firmly committed to the goal of promoting tribal self-government, a goal embodied in numerous federal statutes. We have stressed that Congress' objective of furthering tribal self-government encompasses far more than encouraging tribal management of disputes between members, but includes Congress' overriding goal of encouraging "tribal self-sufficiency and economic development." In part as a necessary implication of this broad federal commitment, we have held that tribes have the power to manage the use of its territory and resources by both member and nonmembers, to undertake and regulate economic activity within the reservation, and to defray the cost of governmental services by levying taxes.
 
 
 35
 Id. at 2386-87 (citations and footnotes omitted).
 
 
 36
 Thus, the Sac and Fox Tribe is possessed of substantial sovereign authority and rights of self-government. That fact has significant impact on the issues to be decided on remand because the immunity enjoyed by the tribal officers will only be limited to the extent that they "acted outside the amount of authority that the sovereign is capable of bestowing."
 
 
 37
 Since the response to the merits of the complaint in this case has yet to be filed, the application of these principles properly should be applied in the first instance by the trial court as we have determined.
 
 
 
 *
 Honorable Howard C. Bratton, United States District Judge for the District of New Mexico, sitting by designation
 
 
 [1]
 Similarly, sovereign immunity does not extend to an official when the official is acting as an individual or outside the scope of those powers that have been delegated to him. Larson v. Domestic & Foreign Corp., 337 U.S. 682, 689-90, 69 S.Ct. 1457, 1461, 98 L.Ed. 1628 (1949). The case at bar, however, is mainly concerned with the allegation that the Sac and Fox Tribe did not have the authority to make the delegations to their officers