**ATKINSON TRADING COMPANY,**
**Plaintiff,**

v.

**The NAVAJO NATION and Ronnye**
**Etcitty, Defendants.**

**Civ. No. 93–1029 JP/DJS.**

United States District Court,
D. New Mexico.

June 17, 1994.

Margaret P. Armijo, William J. Darling, Darling & Associates, Albuquerque, NM, for plaintiff Atkinson Trading Co., Inc., a New Mexico Corp.

Marcelino R. Gomez, Navajo Nation Dept. of Justice, Window Rock, AZ, for defendants Navajo Nation and Ronnye Etcitty.

## MEMORANDUM OPINION AND ORDER

PARKER, District Judge.

The subject of this memorandum opinion and order is defendants' "Motion to Dismiss" filed November 19, 1993. After careful consideration of the applicable pleadings, facts and law and arguments of counsel at a hearing held on April 7, 1994, I conclude that defendants' motion should be granted.[1]

### I. Background

■ This is a Declaratory Judgment Action in which plaintiff seeks relief from the Navajo Hotel Occupancy Tax. Navajo Trib. Code tit. 24, §§ 700–741 (1992). This provision of the Tribal Code imposes a tax of 5% on all persons who pay for the use or possession of a room or space which costs $2.00 or more per day in a hotel which is located "within the exterior boundaries of the Navajo Nation."[2]

---

1. Subsequent to the filing of defendants' motion to dismiss plaintiff filed a motion for summary judgment. Because I will dismiss this case on abstention grounds, plaintiff's motion for summary judgment which addresses the merits of the case will be denied as moot. Defendants' "Motion for Protective Order" filed February 1, 1994 and plaintiff's "Motion to Compel" filed March 1, 1994 also will be denied as moot.

2. Plaintiff also seeks a declaration that the Navajo Nation is prohibited from collecting an Income Tax and a Gross Receipts Tax from it. Neither of these taxes had been enacted by the Navajo Tribal Council when the various motions were filed or at the time of the April 7, 1994 hearing. I agree with defendants that decision on these two taxes is not currently a justiciable issue even for the limited purpose of determining the propriety of exhaustion.

■ Plaintiff is a New Mexico corporation which owns and operates a hotel, restaurant and store on land owned by plaintiff in fee simple in Cameron, Arizona. The real property on which the businesses are located is surrounded by Navajo reservation land. Plaintiff as the proprietor of a business whose customers are subject to the Hotel Occupancy Tax has collected, transmitted and reported the tax to the Office of the Executive Director of the Navajo Tax Commission. The statute which established the tax includes an administrative refund claim procedure for taxpayers claiming they are entitled to a refund. A claimant can appeal an adverse administrative ruling to the Supreme Court of the Navajo Nation. The Supreme Court of the Navajo Nation is empowered to hear any kind of legal challenge to the tax at issue including a challenge based on federal law.[3] Plaintiff did not avail itself of any of these remedies prior to seeking relief in federal court. Defendants contend that I should abstain from addressing plaintiff's claim until plaintiff exhausts its remedies within the administrative and judicial systems of the Navajo Nation.

## II. *Sovereign Immunity*

■ ▪ As a preliminary matter I address the argument that the Navajo Nation is immune from suit in federal court. This proposition is beyond debate. *See, e.g., Tenneco Oil Co. v. Sac and Fox Tribe of Indians of Oklahoma,* 725 F.2d 572, 574 (10th Cir.1984). Plaintiff originally sued only the Navajo Nation. However, subsequent to the filing of defendants' motion to dismiss, plaintiff amended its complaint to add defendant Ronnye Etcitty, an individual tribal officer. Tribal officials alleged to be acting outside the scope of their lawful authority are not immune from suit. *Tenneco,* 725 F.2d at 574.[4] Accordingly, I have jurisdiction to determine the second issue raised by defendants' motion to dismiss—whether principles of comity require plaintiff to exhaust its administrative and judicial remedies under tribal law prior to seeking relief in federal court.

## III. *Exhaustion*

There are two separate issues which I must analyze in determining the exhaustion issue: (1) whether there is an exception to the exhaustion doctrine which bars its application in this case; and (2) if there is no bar to applying the exhaustion doctrine, the propriety of requiring plaintiff to exhaust tribal law remedies under the facts of this case.

The controlling cases on the issue of exhaustion of tribal remedies are *National Farmers Union Insurance Cos. v. Crow Tribe of Indians,* 471 U.S. 845, 105 S.Ct. 2447, 85 L.Ed.2d 818 (1985) and *Iowa Mutual Ins. Co. v. La Plante,* 480 U.S. 9, 107 S.Ct. 971, 94 L.Ed.2d 10 (1987). In both these cases the Supreme Court held that the federal court plaintiffs were required to exhaust their tribal court remedies prior to filing suit in federal court. The Supreme Court stated that exhaustion of remedies in tribal court should be encouraged in certain cases, as a matter of comity.

In *National Farmers* a member of the Crow Tribe of Indians filed suit for personal injuries against a school district in Crow Tribal Court and obtained a default judgment based on the district's failure to answer. Soon thereafter the school district and its insurer, National Farmers, filed suit in federal court seeking to enjoin the tribal court from asserting jurisdiction over the district. The place where the tribal member had been injured was on land owned by the state, but located within reservation boundaries. In *Iowa Mutual,* a liability insurance carrier sought a declaration in federal court that it had no duty to defend or indemnify its insured, a Ranch Company located on the Blackfeet Indian Reservation and owned by members of the Blackfeet tribe. An employee of the ranch, also a member of the tribe, had filed suit in tribal court for personal

---

**3.** Title 7, section 204 of the Navajo Tribal Code provides that "[i]n all cases the Courts of the Navajo Nation shall apply any laws of the United States that may be applicable and any laws or customs of the Navajo Nation not prohibited by applicable federal laws."

**4.** If this case were to continue before me I would dismiss the Navajo Nation from this action. Because I will dismiss the entire case I find a separate dismissal of the Navajo Nation an unnecessary formality.

injuries sustained in the course of his employment. Iowa Mutual was also named in the tribal court suit.

In *National Farmers* the Court concluded that:

> in a case of this kind.... [t]he existence and extent of a tribal court's jurisdiction will require a careful examination of tribal sovereignty, the extent to which that sovereignty has been altered, divested, or diminished, as well as a detailed study of relevant statutes, Executive Branch policy as embodied in treaties and elsewhere, and administrative or judicial decisions.

> We believe that examination should be conducted in the first instance in the Tribal Court itself. Our cases have often recognized that Congress is committed to a policy of supporting tribal self-government and self-determination. That policy favors a rule that will provide the forum whose jurisdiction is being challenged the first opportunity to evaluate the factual and legal bases for the challenge. Moreover, the orderly process of justice in the federal court will be served by allowing a full record to be developed in the Tribal Court before either the merits or any question concerning the appropriate relief is addressed.... Exhaustion of tribal court remedies, moreover, will encourage tribal courts to explain to the parties the precise basis for accepting jurisdiction, and will also provide other courts with the benefit of their expertise in the event of further judicial review.

*National Farmers,* 471 U.S. at 856–857, 105 S.Ct. at 2454 (footnotes omitted). In summary, the *National Farmers* Court established three factors relevant to the propriety of exhaustion: (1) support of tribal self-determination and tribal self-government; (2) serving the orderly administration of justice; and (3) obtaining the benefit of tribal expertise.

The *National Farmers* Court also articulated three exceptions to the exhaustion requirement:

> We do not suggest that exhaustion would be required where an assertion of tribal jurisdiction 'is motivated by a desire to harass or is conducted in bad faith', ... or where the action is patently violative of express jurisdictional prohibitions, or where exhaustion would be futile because of the lack of an adequate opportunity to challenge the court's jurisdiction.

*National Farmers,* 471 U.S. at 856, n. 21, 105 S.Ct. at 2454, n. 21 (citations omitted).

I will first discuss the exceptions to the exhaustion requirement and will explain why they do not apply to this action.

#### A.  Exceptions to Exhaustion

■ Relying on *Montana v. United States,* 450 U.S. 544, 101 S.Ct. 1245, 67 L.Ed.2d 493 (1981), plaintiff argues that exhaustion is inappropriate because the imposition of the occupancy tax on plaintiff's hotel is "patently violative of [an] express jurisdictional prohibition."

In *Montana* the Court held that:

> A tribe may regulate, through taxation, licensing, or other means, the activities of nonmembers who enter consensual relationships with the tribe or its members, through commercial dealing, contracts, leases, or other arrangements.... A tribe may also retain inherent power to exercise civil authority over the conduct of non-Indians on fee lands within its reservation when that conduct threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe.

*Montana,* 450 U.S. at 565–566, 101 S.Ct. at 1258 (citations omitted).[5]

Based on a plain reading of the "exceptions" as articulated in *National Farmers* and recent Tenth Circuit law, I conclude that applying *Montana* to preclude **exhaustion** is not the correct analysis. *See Texaco v. Zah,* 5 F.3d 1374 (10th Cir.1993). Rather, *Montana* should be applied only to determine ultimately the validity of the tax itself. Whether *Montana* helps to resolve the exhaustion question depends on the meaning of

---

**5.** *Montana* addressed the authority of the Crow tribe to regulate hunting and fishing on fee lands owned by non-indians within the reservation boundaries. The court held that the tribe lacked jurisdiction to do so. *Montana* did not address the issue of exhaustion.

"where the action is patently violative of express jurisdictional prohibitions"—i.e. does this refer to the "action" of asserting tribal court jurisdiction over the dispute or the "action" of the tribe in enacting the challenged tax. I believe the former interpretation is the correct one.

Plaintiff contends that the question is not whether the Navajo courts have jurisdiction to hear the case (and determine their jurisdiction), but whether the Navajo Nation exceeded its jurisdiction by taxing plaintiff's operations. If I were to accept plaintiff's interpretation it would be tantamount to my deciding the validity of the tax itself. Plaintiff's analysis skirts the exhaustion issue and ignores the Supreme Court's instruction that "the forum whose jurisdiction is being challenged [should have] the first opportunity to evaluate the factual and legal bases for the challenge." *National Farmers,* 471 U.S. at 856–857, 105 S.Ct. at 2454; *see also National Farmers,* 471 U.S. at 856, 105 S.Ct. at 2454 ("the orderly administration of justice in the federal court will be served by allowing a full record to be developed in the Tribal Court **before either the merits or any question concerning appropriate relief is addressed.**") (emphasis added).

Defendants maintain, and I agree, that the proper inquiry at this stage of the litigation is whether the tribal court's **assertion of jurisdiction** is patently violative of an express jurisdictional prohibition. This calls for an analysis of whether the tribal court has jurisdiction to hear the kinds of challenges currently raised by plaintiff, not whether the Navajo Nation has the power to impose the disputed tax. The approach of the Tenth Circuit in *Texaco v. Zah* supports this conclusion.

In *Texaco,* Texaco challenged oil and gas severance and transaction taxes imposed by the Navajo Nation on Texaco's production and pipeline activities occurring outside the Navajo Reservation but within Navajo Indian Country. Texaco filed an action in federal court seeking a declaration that the Navajo Nation lacked authority to assess these severance and business activity taxes. United States District Judge John Conway dismissed the action finding that plaintiffs were required to exhaust tribal remedies prior to proceeding in federal court.

The Tenth Circuit Court of Appeals agreed with Judge Conway that no exceptions to the exhaustion doctrine applied, but concluded that the propriety of requiring exhaustion could not be decided on the record before it. The Court of Appeals therefore vacated Judge Conway's order of dismissal and remanded the case for "further examination of the comity factors articulated in *National Farmers." Texaco,* 5 F.3d at 1378.

Most relevant to plaintiff's argument here, the Court of Appeals rejected Texaco's argument that there was a "patent violation of an express jurisdictional prohibition" which precluded application of the *National Farmers* exhaustion factors. The court framed the issue in terms of the jurisdictional power of the tribal court over the Navajo Nation's taxation scheme, *not* as plaintiff argues here, as a matter of the power of the tribe itself or of the Navajo Tax Commission to pass and impose a specific tax:

[A]ppellants contend that the tribal courts lack jurisdiction in this case because the Navajo Nation's authority over non-Indians terminates at the reservation boundary. *See, e.g., Merrion v. Jicarilla Apache Tribe,* 455 U.S. 130, 141 [102 S.Ct. 894, 903, 71 L.Ed.2d 21] (1982) (holding that Indian tribe has authority to tax non-indians who do business on the reservation); *United States v. Montana,* 450 U.S. 544, 566 [101 S.Ct. 1245, 1258, 67 L.Ed.2d 493] (1981) (holding that Indian tribe retains inherent power to exercise civil authority over non-indians on fee lands within the reservation). Such cases however, merely hold that Indian tribes have authority over non-indians when the activity occurs within reservation boundaries. They do not expressly stand for the proposition that a tribal court has no jurisdiction over non-Indian activity occurring outside the reservation but within Indian Country. As a result, we cannot say that the tribal court's assertion of jurisdiction here is *patently* violative of an *express* jurisdictional prohibition.

*Texaco,* 5 F.3d at 1377 (emphasis in original). The court emphasized that "the Navajo Nation has expressly granted jurisdiction to its

tribal courts over cases such as this.... [and] [t]his fact strengthen[ed] [the court's] conclusion that the tribal court's jurisdiction over the Navajo Nation's taxation scheme [did] not patently violate an express jurisdictional prohibition." *Id.*

Similar to the situation in *Texaco,* the Navajo Nation in this case imposes a tax on nontribal members for activity occurring on fee land located within the reservation boundaries. In *Texaco* the Tenth Circuit decided that such fee land fell within the definition of Indian Country as defined in the Major Crimes Act.[6] The definition set forth in the Major Crimes Act applies to questions of both criminal and civil jurisdiction. *Texaco,* at 1376, n. 3. The fact that the land in *Texaco* fell within the definition of Indian Country was significant to the Tenth Circuit. As discussed above, the court concluded that the jurisdiction of Indian Tribes does not end at the reservation boundary, thus precluding a determination that there was any patent violation of an express jurisdictional prohibition. *Texaco,* 5 F.3d at 1377.

Here, the land at issue also clearly falls within the statutory definition of Indian Country. Plaintiff's land is indisputably "within the limits of any Indian reservation under the jurisdiction of the United States Government." 18 U.S.C. § 1151(a). In *Solem v. Bartlett,* 465 U.S. 463, 468, 104 S.Ct. 1161–1165, 79 L.Ed.2d 443 (1984) the Supreme Court held that the definition of Indian Country in the Major Crimes Act includes "lands held in fee by non-Indians within reservation boundaries." [7]

Plaintiff also argues that exhaustion in this case would be futile because the tribal courts do not have jurisdiction over matters such as plaintiff's current challenge. As did the Tenth Circuit in *Texaco* in similar circumstances, I find that "the Navajo Nation has expressly granted jurisdiction to its tribal courts over cases such as this." *Texaco,* 5

F.3d at 1377. Navajo courts are vested with jurisdiction "over any and all persons subject to this chapter ... [and] to hear and determine any challenge to the validity of this chapter." Navajo Trib.Code tit. 24, § 434(d) (1986); *see also Texaco,* 5 F.3d at 1377. The tribal code confers jurisdiction over any action "in which the defendant is a resident of Navajo Indian Country, or has caused an action to occur within the territorial jurisdiction of the Navajo Nation." Navajo Trib. Code tit. 7, § 253(2) (1986). The territorial jurisdiction of the Navajo Nation is coextensive with Navajo Indian Country. Navajo Trib.Code tit. 7, § 254 (1986). Moreover, the question of whether the tribe has jurisdiction over this dispute is an issue that "should be conducted in the first instance by the Tribal Court itself." *National Farmers,* 471 U.S. at 856, 105 S.Ct. at 2454; *Texaco,* 5 F.3d at 1376.

No exception to the exhaustion requirement fits this case. Accordingly, I will address the propriety of exhaustion.

### B. *Propriety of Exhaustion*

■ After determining that there was no express jurisdictional prohibition to requiring exhaustion the *Texaco* court concluded that "[w]hen the activity at issue arises on the reservation, [the policies identified in *National Farmers* ] almost always dictate that the parties exhaust their tribal remedies before resorting to the federal forum.... [however] [w]hen the dispute involves non-Indian activity occurring outside the reservation, ... the policies behind the tribal exhaustion rule are not so obviously served." *Texaco,* 5 F.3d at 1378. As noted above, the Court of Appeals found that it had an insufficient record upon which to conclude that Judge Conway's dismissal was proper. In this case I find that exhaustion and dismissal are proper. All

---

**6.** Indian Country is defined as:

(a) all land within the limits of any Indian reservation under the jurisdiction of the United States Government ... (b) all dependent Indian communities within the borders of the United States, ... and (c) all Indian allotments, the Indian Titles to which have not been extin-

guished, including rights of way running through the same.

**7.** In *Ashcroft v. United States Department of Interior,* 679 F.2d 196 (9th Cir.1982), the Ninth Circuit held that the very land at issue here was "on the reservation" for purposes of regulations promulgated pursuant to the Indian Trader Statutes.

three factors articulated in *National Farmers* would be served by requiring exhaustion.[8]

### 1. *Support of Tribal Self–Determination*

At issue in this case is the power of the Navajo Nation to tax. Nothing could go more to the heart of tribal self-determination and self-government than the ability of the tribe to tax and raise revenue. *Merrion v. Jicarilla Apache Tribe,* 455 U.S. 130, 137, 102 S.Ct. 894, 901–02, 71 L.Ed.2d 21 (1982) (tribal taxing power is "a fundamental attribute of sovereignty" and "a necessary instrument of self-government and territorial management."). Tribal self-determination and self-government would be furthered by requiring that a challenge to this power be made via tribal administrative and judicial processes. Inherent in the sovereign power to tax should be the power of the taxing sovereign, at least in the first instance, to hear a challenge to a taxing statute and to determine the statute's application.

### 2. *Serving the Orderly Administration of Justice*

The "orderly administration of justice" will be served by requiring plaintiff first to seek tribal administrative and judicial remedies in regard to the Hotel Occupancy Tax. I am faced with a newly enacted tribal ordinance which has not been interpreted by either tribal administrative personnel or judicial officers. Without a record reflecting tribal interpretation, I cannot assume that a tribal court would summarily reject plaintiff's arguments concerning the validity of the tax. Without any tribal record, either administrative or judicial, I would be "faced [with] an action based on an uninterpreted tribal ordinance and an obscure factual background." *Burlington Northern Railroad Company v. Crow Tribal Council,* 940 F.2d 1239, 1245 (9th Cir.1991) (plaintiff railroad required to exhaust tribal remedies concerning challenge to tribal ordinance establishing commission to regulate railroads crossing the Crow res-

ervation even though the challenge was based on an allegation that the tribe had exceeded its sovereign powers in enacting the ordinance); *see also National Farmers,* 471 U.S. at 856, 105 S.Ct. at 2454 ("The orderly administration of justice in the federal court will be served by allowing a full record to be developed in Tribal Court before either the merits or any question concerning appropriate relief is addressed."). "An initial exercise of tribal jurisdiction not only would bolster tribal self-government, but also would provide any subsequently reviewing federal court with authoritative interpretation of the ordinance." *Burlington Northern,* 940 F.2d at 1245.

### 3. *Obtaining the Benefit of Tribal Expertise*

The Navajo Nation Council enacted the challenged ordinance. The Navajo tribal courts would be in the best position, at least in the first instance, to evaluate tribal law in light of existing federal law.[9] The Navajo Nation has developed a sophisticated judicial system with highly competent jurists. There is every reason to expect that the Navajo Nation will grant plaintiff a fair, unbiased consideration of its arguments about why the Hotel Occupancy Tax should not be imposed on plaintiff's operations.

### IV. *Dismissal or Stay*

Under *Iowa Mutual* and *National Farmers* it is within my discretion to stay or dismiss this action. I see no reason to retain jurisdiction at this point and will dismiss this case without prejudice.

IT IS THEREFORE ORDERED THAT:

1. Defendants' "Motion to Dismiss" is GRANTED.

2. "Plaintiff's Motion for Summary Judgment", defendants' "Motion for Protective

---

8. One of plaintiff's main arguments against exhaustion is that there is currently no action pending in the tribal system. The Tenth Circuit has expressly rejected this argument as a bar to exhaustion. *Texaco,* 5 F.3d at 1376, *citing to Smith v. Moffett,* 947 F.2d 442, 444 (10th Cir.1991); *Brown v. Washoe Housing Authority,* 835 F.2d 1327 (10th Cir.1988).

9. This is not a brand new idea in the jurisprudence of the federal courts. Federal judges have long been directed to stay their hand when an uninterpreted statute of another sovereign is challenged under federal law. *Railroad Commission of Texas v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).

Order", and plaintiff's "Motion to Compel" are DENIED as moot.

3. This case is dismissed without prejudice.