673 F.2d 315
 RAMEY CONSTRUCTION COMPANY, INC., a Texas corporation,
Plaintiff-Appellant,
v.
The APACHE TRIBE OF the MESCALERO RESERVATION, an
incorporated Indian tribe or association in the nature of a
non-profit corporation localized in the State of New Mexico;
the Mescalero Apache Tribe, Inc., an incorporated Indian
tribe localized in the State of New Mexico; the Inn of the
Mountain Gods, a tribal chartered corporation or economic
organization localized in the State of New Mexico; Boyle
Engineering Corporation, a California corporation; and
Highlands Insurance Company, Defendants-Appellees.
 Nos. 78-1376, 81-1129.
 United States Court of Appeals,
Tenth Circuit.
 March 22, 1982.
 
 B. Warren Hart, St. Paul, Minn. (John M. Harens, St. Paul, Minn., with him on the brief), Moore, Costello & Hart, St. Paul, Minn. (and Dee D. Miller of Miller, Baker, Russell & Shackelford, Amarillo, Tex., with him on the brief), in No. 78-1376; John M. Harens, and David A. Kastelic of Moore, Costello & Hart, St. Paul, Minn., and Dee D. Miller of Miller, Baker, Russell & Shackelford, Amarillo, Tex., on the briefs in No. 81-1129, for plaintiff-appellant.
 George E. Fettinger, Alamogordo, N.M. (Kim Jerome Gottschalk, Alamogordo, N.M., on the brief in both cases), Fettinger & Bloom, Alamogordo, N.M., for defendants-appellees Apache Tribe of the Mescalero Reservation, the Mescalero Apache Tribe, Inc., and the Inn of the Mountain Gods.
 Frank H. Allen, Jr., Albuquerque, N.M. (Ruth M. Schifani, Albuquerque, N.M., on the brief in both cases), Modrall, Sperling, Roehl, Harris & Sisk, P. A., Albuquerque, N.M., for defendant-appellee Boyle Engineering Corp.
 Robert D. Taichert of Rodey, Dickason, Sloan, Akin & Robb, Albuquerque, N.M., on the briefs in both cases, for defendant-appellee Highlands Insurance Co.
 Before BARRETT and McKAY, Circuit Judges, and BRIMMER, District Judge.*
 McKAY, Circuit Judge.
 
 
 1
 In 1972 the Mescalero Apache Tribe began construction of a ten million dollar resort hotel complex called the Inn of the Mountain Gods on its reservation in New Mexico for which Ramey Construction Company was the general contractor. After the project was completed in mid-1975, Ramey filed a complaint in the United States District Court for the District of New Mexico against various Tribal Defendants[1] and Boyle Engineering Corporation, the project's architect and engineer. Ramey sought to recover approximately $427,000 of contract retainage withheld by the Tribe, as well as interest on that amount.[2] In addition, Ramey alleged that the Tribal Defendants had breached their contract with Ramey, causing damages due to disruption, delay, improper suspension of work, and undisclosed subsoil problems. Ramey also alleged that Boyle and the Tribe had misrepresented that Boyle would perform as project manager. Ramey further alleged that Boyle misrepresented the date on which the construction site would be ready for Ramey to begin work, and that Boyle was negligent in the performance of its duties, particularly project design and management.
 
 
 2
 The district court found that it had jurisdiction over the Tribal Defendants, but ruled against Ramey on the merits, adopting verbatim the defendants' proposed findings of fact and conclusions of law. Plaintiff appealed and this court remanded the case to the district court for "significantly new, more detailed findings." Ramey Construction Co. v. Apache Tribe of the Mescalero Reservation, 616 F.2d 464, 468 (10th Cir. 1980). On remand the district court reversed its earlier denial of the Tribe's motion to dismiss for lack of jurisdiction, and dismissed the Tribal Defendants from the case. The district court also concluded, as it had before, that Boyle was not guilty of any negligence, misrepresentations, negligent misrepresentations or other defaults causing damages to Ramey. The district court judge on remand complied with this court's previous mandate by supporting his decision with adequate findings of fact and conclusions of law.
 
 
 3
 Ramey now appeals alleging: (1) that the district court erred in reconsidering the issues of jurisdiction and sovereign immunity; (2) that even if such a reconsideration were appropriate, the court erred in concluding that the Tribal Defendants were immune from suit and that the court lacked jurisdiction over the subject matter of the action; (3) that the Tribal Defendants owe Ramey $65,000 in interest on the contract retainage; and (4) that the court erred in concluding that Boyle was not guilty of negligence, misrepresentations, or negligent misrepresentations that caused Ramey damage.
 
 
 4
 I. Reconsideration of Jurisdiction on Remand
 
 
 5
 Ramey argues that the district court had no power to reverse its earlier judgment that the court had jurisdiction over the Tribal Defendants and that they were not sovereignly immune from suit. In particular, Ramey alleges (1) that the district court exceeded the scope of this court's remand by raising the jurisdictional issue, and (2) that the Tribe was precluded from raising this issue on remand because it failed to cross-appeal the district court's denial of its motion to dismiss. Neither of these contentions has merit.
 
 
 6
 In Ramey Construction Co. v. Apache Tribe of the Mescalero Reservation, 616 F.2d 464 (10th Cir. 1980), this court remanded the case for a full reconsideration and adoption of appropriate findings at each level of analysis. Our determination at that time was that the lower court's findings of fact and conclusions of law were inadequate on all issues. The absence of findings concerning the issue of tribal sovereign immunity was specifically noted. Id. at 467-68 & n.5. This court's action can only be construed as a general remand requiring the district court to comply fully with Rule 52 of the Federal Rules of Civil Procedure. See id. at 466-67. Therefore, the district court did not exceed the scope of our remand by reconsidering the sovereign immunity issue.
 
 
 7
 The fact that the Tribal Defendants did not cross-appeal the sovereign immunity ruling after they had prevailed on the merits does not foreclose reconsideration of that issue on remand. The issue of sovereign immunity is jurisdictional. 14 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3654, at 156-58 (1976); People ex rel. California Department of Fish and Game v. Quechan Tribe of Indians, 595 F.2d 1153, 1154 & n.1 (9th Cir. 1979). So long as a case is pending, the issue of federal court jurisdiction may be raised at any stage of the proceedings either by the parties or by the court on its own motion. 1 Moore's Federal Practice P 0.60(4) (2d ed. 1981). Rule 12(h)(3) of the Federal Rules of Civil Procedure provides that "(w) henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." Therefore, the court did not err in reconsidering this issue, and the court's finding of tribal sovereign immunity must stand unless it affirmatively appears that there has been a congressional or tribal waiver of immunity.
 
 II. Jurisdiction over the Tribal Defendants
 
 8
 Ramey alleges a congressional waiver of sovereign immunity under the Indian Civil Rights Act (ICRA), 25 U.S.C. §§ 1301-1341, because the Tribal Defendants deprived it of equal protection of the laws and due process of law by (1) denying it access to tribal courts, and (2) wrongfully withholding the contract retainage. In particular, Ramey cites § 1302 of the Act, which provides:No Indian tribe in exercising powers of self-government shall-
 
 
 9
 (8) deny to any person within its jurisdiction the equal protection of its laws or deprive any person of liberty or property without due process of law.
 
 
 10
 Because of the alleged deprivation of rights guaranteed by the ICRA, Ramey asserts that the district court had jurisdiction over its claims by virtue of either 28 U.S.C. § 1343(a)(4), conferring jurisdiction over federal laws protecting civil rights, or § 1331, which confers jurisdiction over matters arising under the laws of the United States.[3]
 
 
 11
 In Santa Clara Pueblo v. Martinez, 436 U.S. 49, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978), the Supreme Court clarified the meaning and effect of § 1302 of the ICRA. The Court made clear that, aside from authorizing writ of habeas corpus actions as provided in § 1303, the ICRA leaves tribal sovereign immunity intact. Id. at 59, 98 S.Ct. at 1677. In this action, Ramey has alleged a claim for damages based on breach of contract. This type of injury does not rise to the level of a constitutional deprivation to be redressed under the ICRA.[4] Therefore, the ICRA neither provides a jurisdictional basis for Ramey's claims nor waives the Tribe's sovereign immunity.
 
 
 12
 Ramey claims that even if the Tribal Defendants were sovereignly immune from suit, they waived that immunity by one or all of the following actions: (1) agreeing to an attorneys' fees clause in the contract; (2) entering into a loan agreement with the Bank of New Mexico obligating the Tribe to "duly pay and discharge ... all claims of any kind ..."; (3) submitting a certificate to the United States Economic Development Agency stating that the contract documents "constitute valid and legally binding obligations upon the parties ..."; (4) obtaining payment and performance bonds from a surety; (5) consenting to partial summary judgment with respect to the contract retainage; and (6) including a "sue and be sued" clause in its tribal corporate charter.
 
 
 13
 "It is settled that a waiver of sovereign immunity 'cannot be implied but must be unequivocally expressed.' " Santa Clara Pueblo v. Martinez, 436 U.S. at 58, 98 S.Ct. at 1677 (quoting United States v. Testan, 424 U.S. 392, 399, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976)). The first four grounds upon which Ramey premises its claim of a waiver of sovereign immunity are simply attempts by Ramey to imply a waiver when no express waiver exists. There is no evidence that the Tribe expressly waived its sovereign immunity in any of these documents as Ramey claims. Compare Merrion v. Jicarilla Apache Tribe, 617 F.2d 537, 540 (10th Cir.), aff'd, --- U.S. ----, 102 S.Ct. 894, 71 L.Ed.2d 21 (1982) (tribal council passed a formal resolution expressly waiving sovereign immunity).
 
 
 14
 Similarly, the Tribe's consent to entry of partial summary judgment on the retainage claim cannot be construed as a waiver of sovereign immunity with respect to Ramey's other claims. The United States may consent to be sued, and thereby waive its sovereign immunity. See United States v. Mitchell, 445 U.S. 535, 538, 100 S.Ct. 1349, 1352, 63 L.Ed.2d 607 (1980). The Indian Tribes' sovereign immunity is co-extensive with that of the United States. See United States v. United States Fidelity & Guaranty Co., 309 U.S. 506, 514, 60 S.Ct. 653, 657, 84 L.Ed. 894 (1940); Namekagon Development Co. v. Bois Forte Reservation Housing Authority, 517 F.2d 508, 510 (8th Cir. 1975); Sekaquaptewa v. MacDonald, 619 F.2d 801, 808 (9th Cir.), cert. denied, 449 U.S. 1010, 101 S.Ct. 565, 66 L.Ed.2d 468 (1980); Hamilton v. Nakai, 453 F.2d 152, 158 (9th Cir. 1971), cert. denied, 406 U.S. 945, 92 S.Ct. 2044, 32 L.Ed.2d 332 (1972). When consent to be sued is given, the terms of the consent establish the bounds of a court's jurisdiction. United States v. Mitchell, 445 U.S. at 538, 100 S.Ct. at 1352; United States v. Sherwood, 312 U.S. 584, 586, 61 S.Ct. 767, 769, 85 L.Ed. 1058 (1941); Reynolds v. United States, 643 F.2d 707, 713 (10th Cir.), cert. denied, --- U.S. ----, 102 S.Ct. 94, 70 L.Ed.2d 85 (1981). In this case, the Tribe consented only to entry of judgment in the amount of the contract retainage it withheld; it did not thereby agree to be sued on any other claims.
 
 
 15
 Ramey also claims that because the Tribe consented to judgment in the amount of the retainage, the district court should have awarded interest on that amount. However, a waiver of sovereign immunity is to be strictly construed. Reynolds v. United States, 643 F.2d 707, 713 (10th Cir.), cert. denied, --- U.S. ---, 102 S.Ct. 94, 70 L.Ed.2d 85 (1981); Hurley v. United States, 624 F.2d 93, 95 (10th Cir. 1980). The scope of the Tribe's consent to suit in this case precludes recovery of interest on the amount of retainage.
 
 
 16
 Finally, the presence of a "sue and be sued" clause in the tribal corporate charter cannot serve as a waiver of sovereign immunity in this case. The trial judge found that Ramey contracted and dealt only with the Mescalero Apache Tribe as a constitutional entity, and not with the Mescalero Apache Tribe, Inc., the tribal corporate entity. Record, supp. vol. 1, at 293. Section 476 of the Indian Reorganization Act, 25 U.S.C. § 476, authorizes Indian Tribes to organize a constitutional entity, and § 477 authorizes organization of a corporate entity. Most courts that have considered the issue have recognized the distinctness of these two entities. See, e.g., Gold v. Confederated Tribes of the Warm Springs Indian Reservation, 478 F.Supp. 190, 196 (D.Or.1979); Boe v. Fort Belknap Indian Community, 455 F.Supp. 462, 463-64 (D.Mont.1978), aff'd, 642 F.2d 276 (9th Cir. 1981); Parker Drilling Co. v. Metlakatla Indian Community, 451 F.Supp. 1127, 1136 (D.Alaska 1978); Atkinson v. Haldane, 569 P.2d 151, 170-75 (Alaska 1977). But see Martinez v. Southern Ute Tribe, 150 Colo. 504, 374 P.2d 691 (1962). The trial judge recognized that the Mescalero Apache constitutional and corporate entities were separate and distinct. Record, supp. vol. 1, at 287. Although the evidence on these issues was disputed at trial, the record supports both of the district court's findings. Therefore, the consent to suit clause in the corporate charter of the Mescalero Apache Tribe, Inc. in no way affects the sovereign immunity of the Tribe as a constitutional entity. We find no error in the district court's determination that the Tribe maintained its sovereign immunity and therefore is not subject to jurisdiction.[5] The trial court also found that the Inn of the Mountain Gods is a sub-entity of the Tribe rather than a separate corporate entity, and is thus clothed with the sovereign immunity of the Tribe. Record, supp. vol. 1, at 290. Although the evidence on this issue also was disputed at trial, we do not believe that this factual determination was clearly erroneous.
 
 
 17
 Therefore, the district court properly dismissed Ramey's breach of contract and misrepresentation claims against the Tribal Defendants based on sovereign immunity. The only remaining claims to be considered are those against Boyle Engineering Company, which are based on negligence and misrepresentation rather than breach of contract.
 
 III. Tort Claims Against Boyle
 
 18
 Ramey claims that Boyle is liable for (1) failing to manage or coordinate the project, (2) misrepresenting and delaying the date of completion of site grading, (3) negligently investigating and misrepresenting the subsoil conditions, (4) delaying the painting and final finishing work, and (5) making errors and omissions in drafting the plans and specifications for the project. Because of Boyle's alleged negligence, Ramey claims that it encountered an eight-month delay in completing the project, which reduced productivity and resulted in unexpectedly high job costs.
 
 
 19
 The trial judge ruled against Ramey on all claims after finding no negligence or misrepresentations by Boyle, and in any event, that Ramey had suffered no damages proximately caused by Boyle. Rule 52 of the Federal Rules of Civil Procedure provides that "(i)n all actions tried upon the facts without a jury ... (f)indings of fact shall not be set aside unless clearly erroneous." The trial court's findings are presumptively correct and this court cannot disturb them unless they are clearly erroneous. Quarles v. Fuqua Industries, Inc., 504 F.2d 1358, 1361 (10th Cir. 1974).
 
 A. Project Management and Coordination
 
 20
 Ramey alleges that Boyle was responsible for the overall management and coordination of the project, and is therefore liable for all damages caused by its failure to perform these duties. As examples of Boyle's failure to manage and coordinate the work, Ramey specifically cites delays by two subcontractors in grading the hotel site and completing the utility work, and delay resulting from a stop paint order issued by the Tribe while it reconsidered the color scheme.
 
 
 21
 The trial judge, however, found that "Boyle's duties of coordination and management under the contract were limited, and related primarily to 'surveillance of project construction to assure compliance with plans, specifications and other contract documents.' " Record, supp. vol. 1, at 300. Furthermore, the court found that although Boyle had authority to give orders and directions at the worksite, it had no power to ensure the performance of the various contractors working at the hotel site. The court also determined that Boyle had fulfilled the limited duties of coordination specified in the contract.
 
 
 22
 After reviewing the documents and the record, we cannot say that the trial judge's findings in this regard are clearly erroneous. Ideally, on a project of this magnitude, some entity should be responsible for overall management and coordination, and indeed such a provision might have alleviated many of the serious problems that plagued this project. However, the contract between the Tribe and Boyle simply did not provide that Boyle would undertake the responsibility of project management. This duty remained with the owner, the Mescalero Apache Tribe. Under well-settled principles of tort law, since Boyle had no duty to coordinate and manage the progress of the work, it cannot be liable for any damages caused by inadequate coordination or management. W. Prosser, Handbook of the Law of Torts § 30, at 143 (4th ed. 1971); Barham v. Baca, 80 N.M. 502, 503, 458 P.2d 228, 229 (1969); White v. City of Lovington, 78 N.M. 628, 629-30, 435 P.2d 1010, 1011-12 (Ct.App.1967). Therefore, the trial judge correctly found that Boyle was not liable for failure to manage or coordinate the project. Similarly, without a duty to manage the project, Boyle cannot be liable for the delays caused by other subcontractors' failure to timely complete their work, or for the delay caused by the stop paint order issued by the Tribe.[6]
 
 B. Site Grading
 
 23
 Ramey claims that it was damaged by Boyle's misrepresentations about the time the site grading would be completed. The trial court found that Ramey had not relied on any representations made by Boyle, because Ramey subsequently adopted its own work schedule that did not incorporate the alleged misrepresentation. Furthermore, the court found that Ramey had not been damaged by any delay in completion of grading of the entire site because completed sites were always available for work. After a careful review of the record, we agree that Ramey's schedule did not require, nor could Ramey have used the entire site at the beginning of its work. Therefore, we find no adequate justification for overturning the trial court's findings.
 
 C. Subsoil Conditions
 
 24
 Ramey also alleges that Boyle negligently investigated and misrepresented the subsoil conditions at the construction site. The court found that Boyle made no representations that the subsoil conditions at the hotel site were suitable. The subsoil reports that allegedly were negligently prepared were not prepared by Boyle and were not part of the contract documents. The court also determined that Ramey was not justified in relying on the subsoil reports. Further, the court found that Ramey was obligated under the terms of the contract to correct unforeseen soil conditions, and that the contract contained provisions for adjusting payments accordingly. Under these circumstances, the court did not err in finding no liability on Boyle's part for any damages Ramey incurred because of unforeseen subsoil conditions.
 
 
 25
 D. Errors and Omissions in Plans and Specifications
 
 
 26
 Finally, Ramey alleges that Boyle was negligent in preparing the plans and specifications. Ramey introduced into evidence an exhibit detailing more than 100 design errors and omissions that it discovered in the course of work. The court found that "(t)he number of claimed errors and omissions is insignificant" in view of the fact that there were 330 drawings, more than 500 pages of calculations, and 1800 specific details for the project. Record, supp. vol. 1, at 304. The court also determined that the plans and specifications prepared by Boyle were adequate for the purposes of bidding and construction. Further, the court found that Ramey did not sufficiently prove that it suffered any damages as a result of the alleged errors and omissions. Although conflicting evidence on this issue was presented at trial, our review of the record does not persuade us that the trial judge's findings in this regard are clearly erroneous.
 
 IV. Conclusion
 
 27
 Findings of the trial court must be upheld on appeal unless they are clearly erroneous. See, e.g., Francia v. White, 594 F.2d 778, 782 (10th Cir. 1979); Volis v. Puritan Life Insurance Co., 548 F.2d 895, 901 (10th Cir. 1977). "A trial court's findings are not to be deemed clearly erroneous unless, on the entire record, we are left with a definite and firm conviction that a mistake has been made." Lyles v. American Hoist & Derrick Co., 614 F.2d 691, 694 (10th Cir. 1980) (citing Diggs v. Western Electric Co., 587 F.2d 1070, 1072 (10th Cir. 1978)). Our review of the voluminous record in this hotly contested litigation does not convince us that the trial court erred in finding that the Tribe was immune from suit and that Boyle was not liable on Ramey's claims of negligence or misrepresentation. Accordingly, the judgment of the district court is affirmed.
 
 
 28
 AFFIRMED.
 
 
 
 *
 Of the United States District Court for the District of Wyoming, sitting by designation
 
 
 [1]
 The Tribal Defendants include the Mescalero Apache Tribe, the Mescalero Apache Tribe, Inc., and the Inn of the Mountain Gods
 
 
 [2]
 The money was being withheld pending release of Ramey's claims against the Tribal Defendants. Partial summary judgment in Ramey's favor was entered prior to trial in the amount of the withheld retainage
 
 
 [3]
 Federal court jurisdiction under the ICRA generally has been grounded in 28 U.S.C. § 1343(a)(4). See, e.g., Janis v. Wilson, 521 F.2d 724, 726 (8th Cir. 1975); Howlett v. Salish and Kootenai Tribes, 529 F.2d 233, 236 (9th Cir. 1976); Shubert Construction Co. v. Seminole Tribal Housing Authority, 490 F.Supp. 1008, 1009-10 (S.D.Fla.1980)
 Ramey claims that the district court has jurisdiction over the remaining contract and tort claims under the court's pendent jurisdiction. Because of our ruling on the applicability of the ICRA in this suit and the scope of the tribal defendants' sovereign immunity, infra, we do not reach this issue.
 
 
 [4]
 Ramey relies heavily on Dry Creek Lodge, Inc. v. Arapahoe and Shoshone Tribes, 623 F.2d 682 (10th Cir. 1980), cert. denied, 449 U.S. 1118, 101 S.Ct. 931, 66 L.Ed.2d 847 (1981). That case involved particularly egregious allegations of personal restraint and deprivation of personal rights that are not present in this action
 
 
 [5]
 This determination disposes of Ramey's claim that federal jurisdiction may be based on diversity of citizenship under 28 U.S.C. § 1332(a), and its claim of denial of equal protection based on lack of access to the tribal court. Because of its sovereign immunity, the Tribe cannot be sued in any court without its consent or the consent of Congress
 
 
 [6]
 The trial judge based his finding of no liability for the stop paint order on the fact that Ramey had suffered no damages because it had been fully compensated for the delay under various change orders. We reach the same result but for a different reason: as a matter of law, without a duty to manage the project, Boyle cannot be liable for delay caused by the Tribe