**STATE OF OKLAHOMA ex rel. OKLA-HOMA TAX COMMISSION, Plaintiff-Appellant,**

v.

**Jan GRAHAM and Chickasaw Nation, By and Through Overton James, Governor of the Chickasaw Nation, Defendants-Appellees.**

No. 86–1655.

United States Court of Appeals, Tenth Circuit.

June 26, 1987.

Robert C. Jenkins (J. Lawrence Blankenship with him on the briefs), Oklahoma City, Okl., for plaintiff-appellant.

Bob Rabon of Kile and Rabon, Hugo, Okl., for defendants-appellees.

Before SEYMOUR, MOORE and TACHA, Circuit Judges.

JOHN P. MOORE, Circuit Judge.

The State of Oklahoma ex rel. Oklahoma Tax Commission (State or appellant) appeals the district court's denial of its motion to remand and subsequent granting of the motion to dismiss filed by defendants Jan Graham and the Chickasaw Nation (Chickasaw Nation collectively or the

Tribe). In its first order, the United States District Court for the Eastern District of Oklahoma held that removal was proper because the Constitution vests the Federal Government with exclusive authority over Indian tribes which is not limited or prohibited by 28 U.S.C. § 1343, the Tax Injunction Act. The district court, in a second order, then dismissed the State's action on the basis of the Chickasaw Nation's sovereign immunity from unconsented suit. The State now urges removal was improper because the action was based on state law alone as revealed plainly on the face of its complaint. Alternatively, if removal is affirmed, the State argues that sovereign immunity cannot bar a state's legitimate power to levy and collect taxes. We disagree with both contentions and affirm the orders of the district court.

## I.

The Chickasaw Nation, one of the Five Civilized Tribes early removed to Indian Territory, is a federally recognized Indian tribe which owns and operates the Chickasaw Motor Inn (the motel) in Sulfur, Oklahoma. The motel was purchased by the Chickasaw Nation as part of a tribal economic development project. The tribal legislature authorized the operation of a tobacco shop and bingo game at the motel. Jan Graham, an employee of the Chickasaw Nation, manages the motel, the tobacco shop, and the game.

The State filed its complaint in the District Court of Murray County, Oklahoma, alleging that large quantities of cigarettes not bearing state excise and tax stamps were sold at retail to the general public from the motel. The absence of these tax stamps as well as the Chickasaw Nation's failure to file reports of its sales allegedly violated Okla.Stat. tit. 68, §§ 306, 312, 316, 1354, 1361, and 1362. The State further alleged that state sales taxes had not been paid on gross receipts from the operation of the bingo game at the motel, and the required reports had not been filed. The State sought an order permanently enjoining and restraining the Chickasaw Nation from conducting these activities and all

business at the motel until all taxes, penalties, and interest were paid in full. The state court immediately granted a temporary restraining order to enjoin the Chickasaw Nation from selling unstamped cigarettes and operating the bingo games.

Subsequently, the Chickasaw Nation removed the action to the United States District Court for the Eastern District of Oklahoma. The State moved to remand the action. Citing *Montana v. Blackfeet Tribe of Indians,* 471 U.S. 759, 105 S.Ct. 2399, 85 L.Ed.2d 753 (1985), and *Moe v. Confederated Salish & Kootenai Tribes of Flathead Reservation,* 425 U.S. 463, 96 S.Ct. 1634, 48 L.Ed.2d 96 (1976), the district court denied the State's motion. The Chickasaw Nation then moved to dismiss the action pursuant to Fed.R.Civ.P. 12(b) for lack of subject matter jurisdiction. Granting the Tribe's motion, the district court noted that although neither this court nor the United States Supreme Court had laid a clear precedent for the determination of whether the Tribe's sovereign immunity from unconsented suits barred the present action, federal case law, particularly *Santa Clara Pueblo v. Martinez,* 436 U.S. 49, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978), and *Chemehuevi Indian Tribe v. California State Bd. of Equalization,* 757 F.2d 1047 (9th Cir.), *rev'd in part on other grounds,* 474 U.S. 9, 106 S.Ct. 289, 88 L.Ed.2d 9 (1985), dictated that the doctrine of sovereign immunity bars suit against the Tribe.

We agree with the conclusion reached by the trial court, but we emphasize the issues are subject to two separate inquiries. First, we must determine whether removal jurisdiction was present. Second, if removal is proper, we must determine whether substantive jurisdiction exists.

## II.

### A.

The State urges us to scrutinize the face of its complaint and hold that no federal question is present to permit removal. Bisecting this argument, the State contends, first, that the action involves solely the interpretation of state tax and revenue

laws and, second, that removal is prohibited by 28 U.S.C. § 1341, the Tax Injunction Act.

█ We are unswayed by either assertion, mindful instead that our inquiry into whether a federal court has removal jurisdiction and whether it may exercise its limited substantive jurisdiction is not perforce bounded by the face of a complaint. Indeed, when the state plaintiff couches his "necessarily federal cause of action solely in state law terms ... the federal removal court will look beyond the letter of the complaint to the substance of the claim in order to assert jurisdiction." 14A Wright, Miller & Cooper, *Federal Practice & Procedure* § 3722, at 243 (1985).

█ The substance of the State's claim embraces the central jurisdictional issue we must decide in this appeal. Indeed, when we strip the State's complaint of its statutory baggage, we are left with an action in which the State is attempting to enforce an essential element of its sovereignty, the power to tax, over an Indian tribe.

This recognition underscores the implicit federal question lodged in the State's complaint and focuses our inquiry. *National Farmers Union Ins. Cos. v. Crow Tribe of Indians,* 471 U.S. 845, 105 S.Ct. 2447, 85 L.Ed.2d 818 (1985); *Superior Oil Co. v. United States,* 798 F.2d 1324, 1328 (10th Cir.1986). "The Constitution vests the Federal Government with exclusive authority over relations with Indian tribes." *Montana v. Blackfeet Tribe of Indians,* 471 U.S. at 764, 105 S.Ct. at 2402 (citations omitted). *See also Williams v. Lee,* 358 U.S. 217, 220, 79 S.Ct. 269, 270, 3 L.Ed.2d 251 (1959). The corollary of this principle is clear. "Absent an effective waiver or consent, it is settled that a state court may not exercise jurisdiction over a recognized Indian tribe." *Puyallup Tribe, Inc. v. De-*

*partment of Game of Wash.,* 433 U.S. 165, 172, 97 S.Ct. 2616, 2621, 53 L.Ed.2d 667 (1977). Moreover, it must *"affirmatively appear* [ ] that there has been a congressional or tribal waiver of immunity." *Ramey Constr. Co. v. Apache Tribe,* 673 F.2d 315, 318 (10th Cir.1982) (emphasis added); *see also Weeks Constr., Inc. v. Oglala Sioux Housing Auth.,* 797 F.2d 668 (8th Cir.1986). Thus, an alleged waiver or consent to suit is a necessary element of the *well-pleaded* complaint. *See also North Davis Bank v. First Nat'l Bank of Layton,* 457 F.2d 820, 822 (10th Cir.1972) (action necessarily presented threshold question of federal law); *Madsen v. Prudential Federal Savings & Loan Ass'n,* 635 F.2d 797, 801 (10th Cir.1980), *cert. denied,* 451 U.S. 1018, 101 S.Ct. 3007, 69 L.Ed.2d 389 (1981) (distinguishing *North Davis Bank* ). Thus, removal jurisdiction as to our first inquiry was correctly asserted.

Furthermore, the State can direct us to no contrary precedent or principle to require remanding this action to the state court. The State's citations to authority are limited and distinguishable.[1] In fact, appellant is unable to provide us with any authority in which a state, absent a tribe's valid waiver or consent to suit, has succeeded in retaining state court jurisdiction in circumstances similar to our case.

Nevertheless, during oral argument, the State refocused its argument and cited *Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for Southern Cal.,* 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983), for the proposition that a federal defense will not deprive a state court of jurisdiction. Appellant contends *Franchise Tax* prohibits our going beyond the face of the complaint to fashion its cause of action to the Tribe's federal defense.

---

**1.** The State cites *State of Okla. ex rel. David Moss, Dist. Attorney v. Muskogee (Creek) Nation,* Nos. 86–1832, 86–1887 (N.D.Okla. filed June 4, 1986, cross appeal filed June 13, 1986). The specific issue in that appeal is whether the state may enforce its nuisance law to prohibit the operation of the tribe's bingo game. Finally, appellant cites *Wisconsin v. Wisconsin Winnebago Indian Tribe,* 603 F.Supp. 428 (W.D.Wis.1985)

(state civil forfeiture action· to enforce state criminal statute is not removable). During oral argument, the State stressed that our decision in *Crow v. Wyoming Timber Products Co.,* 424 F.2d 93 (10th Cir.1970), resolves the removal issue. *Crow* addresses the derivative nature of removal jurisdiction and is helpful although not entirely dispositive of this appeal.

In *Franchise Tax*, the Court addressed the issue of whether a state's suit to collect state taxes against a welfare benefit trust is removable to a federal district court because of ERISA preemption of a state's power to levy on trust funds. The Supreme Court held that a suit filed by state tax authorities to enforce state levies against funds held in an ERISA employee benefit plan is neither a creature of ERISA nor a suit of which the federal courts would take jurisdiction because of a question of federal law. *Id.* at 28, 103 S.Ct. at 2856. The Court applied the well-pleaded complaint rule to circumscribe the presence of federal question jurisdiction in plaintiff's complaint and found that the ERISA defense did not completely preempt the state cause of action. Appellant urges the same analysis is appropriate here.

*Franchise Tax Board* does not defeat federal removal jurisdiction in this case because the defendants are asserting the absence of jurisdiction and not federal preemption. Tribal sovereign immunity is jurisdictional, *Ramey Constr. Co. v. Apache Tribe of Mescalero Reservation*, 673 F.2d 315, 318 (10th Cir.1982), and, as we shall discuss later, places a different spin upon our inquiry. At this juncture, however, we find that removal was proper because of the constitutional grant of federal jurisdiction over Indian affairs. 28 U.S.C. § 1331.

### B.

■ This initial holding recognizes that when removal was effected automatically in this case, the federal district court instantly acquired the threshold jurisdiction to decide whether it had the power to exercise jurisdiction over the action. This "jurisdiction to determine jurisdiction" is an essential power, subject to review of any court, particularly the federal courts of lim-

ited jurisdiction. *Land v. Dollar*, 330 U.S. 731, 739, 67 S.Ct. 1009, 1013, 91 L.Ed. 1209 (1947); *Chicot County Drainage Dist. v. Baxter State Bank*, 308 U.S. 371, 376, 60 S.Ct. 317, 319, 84 L.Ed. 329 (1940). For this reason, upon removal, the federal district court acquired the same threshold jurisdiction that was vested in the state court as well. This jurisdiction to determine jurisdiction is not defeated by a subsequent determination that a court does not have subject matter jurisdiction over the issues in controversy.[2]

### C.

■ The State's second argument to defeat removal jurisdiction ignores established precedent. The Tax Injunction Act, 28 U.S.C. § 1341, does not mandate state court jurisdiction. *Moe v. Confederated Salish & Kootenai Tribes*, 425 U.S. at 463, 96 S.Ct. at 1636, laid this issue to rest upon analyzing the origin of § 1341 and its long-accepted applicability to the United States. *Moe* settled that "[s]ince the United States is not barred by § 1341 from seeking to enjoin the enforcement of a state tax law, ... the Tribe is not barred from doing so here." *Id.* at 474, 96 S.Ct. at 1642 (citation omitted). Section 1341 does not prohibit the Chickasaw Nation's removal of this action.

### III.

Having concluded removal was proper, we turn to the State's contention that the district court erred in dismissing the suit against the Tribe and Jan Graham, individually, on the basis of tribal sovereign immunity. Support for this argument is difficult to discern because the State relies on precedent in which the issue of sovereign immunity was not raised[3] and because the State interweaves the merits of the action

**2.** This concept unites our threshold jurisdictional inquiry with the derivative nature of removal jurisdiction. *Minnesota v. United States,* 305 U.S. 382, 59 S.Ct. 292, 83 L.Ed. 235 (1939); *Goodrich v. Burlington Northern R.R.,* 701 F.2d 129, 130 (10th Cir.1983).

**3.** For example, the State cites *Mescalero Apache Tribe v. Jones,* 411 U.S. 145, 93 S.Ct. 1267, 36 L.Ed.2d 114 (1973) (tribe brought protest of

New Mexico use tax); *Washington v. Confederated Tribes of Colville Indian Reservation,* 447 U.S. 134, 100 S.Ct. 2069, 65 L.Ed.2d 10 (1980) (actions were brought by the United States on behalf of the tribes); *Rice v. Rehner,* 463 U.S. 713, 103 S.Ct. 3291, 77 L.Ed.2d 961 (1983) (federally licensed Indian trader sought declaratory judgment against state alcoholic beverage control board).

with the legal issue of dismissal. Nevertheless, the principles governing the resolution of this question are not new. On the contrary, "[t]he policy of leaving Indians free from state jurisdiction and control is deeply rooted in the Nation's history." *McClanahan v. State Tax Comm'n of Arizona,* 411 U.S. 164, 168, 93 S.Ct. 1257, 1260, 36 L.Ed.2d 129 (1973) (citing *Rice v. Olson,* 324 U.S. 786, 789, 65 S.Ct. 989, 991, 89 L.Ed. 1367 (1945)).

The Court has consistently recognized that "Indian tribes retain attributes of sovereignty over both their members and their territory." *California v. Cabazon Band of Mission Indians,* — U.S. —, 107 S.Ct. 1083, 1087, 94 L.Ed.2d 244 (1987). This tribal sovereignty is historically recognized to have a unique and limited character. "It exists only at the sufferance of Congress," *United States v. Wheeler,* 435 U.S. 313, 323, 98 S.Ct. 1079, 1086, 55 L.Ed.2d 303 (1978); serves to promote Indian self-government and economic self-sufficiency, *White Mountain Apache Tribe v. Bracker,* 448 U.S. 136, 100 S.Ct. 2578, 65 L.Ed.2d 665 (1980); and represents an accommodation between valid though competing Indian and state interests, *Rice v. Rehner,* 463 U.S. 713, 719, 103 S.Ct. 3291, 3295, 77 L.Ed.2d 961 (1983). Although the sovereign immunity enjoyed by tribes is not absolute, we may infer state authority only "where Congress has expressly provided that state laws shall apply." *McClanahan,* 411 U.S. at 171, 93 S.Ct. at 1261.

■ Hence, tribal sovereign immunity prohibits suit *against* Indian nations without Congressional authorization. This sovereign immunity enjoyed by a tribe is "as though the immunity which was theirs as sovereigns passed to the United States for their benefit." *United States v. United States Fidelity & Guar. Co.,* 309 U.S. 506, 512, 60 S.Ct. 653, 656, 84 L.Ed. 894 (1940). Thus, before *any* court can acquire jurisdiction over a tribe, it must affirmatively appear that "there has been a congressional or tribal waiver of immunity." *Ramey Constr. Co. v. Apache Tribe,* 673 F.2d at 318. "The judicial doctrine of tribal sovereign immunity has long protected Indian tribes from suit in state and federal courts." *White v. Pueblo of San Juan,* 728 F.2d 1307, 1312 (10th Cir.1984); *see also Kennerly v. United States,* 721 F.2d 1252, 1258 (9th Cir.1983).

■ There is no indication in the record on the motion to dismiss that an unequivocal waiver, *Santa Clara Pueblo v. Martinez,* 436 U.S. at 58, 98 S.Ct. at 1677, or consent to suit was offered to permit the State to litigate this action. *Chemehuevi Indian Tribe v. California State Bd. of Equalization,* 757 F.2d 1047, 1052 (9th Cir. 1985), *rev'd in part,* 474 U.S. 9, 106 S.Ct. 289, 88 L.Ed.2d 9 (1985). ("Like the United States, an Indian tribe can consent to suit, but 'such consent must be unequivocally indicated.'" (citations omitted)). Moreover, we are directed to no authority, absent these conditions, to authorize the suit.[4] Instead, at this stage, resolution must be guided by the established tradition of that sovereign immunity inherent in the distinct status of the Chickasaw Nation. *Santa Clara Pueblo v. Martinez,* 436 U.S. at 49, 98 S.Ct. at 1672; *Puyallup Tribe,* 433 U.S. at 165, 97 S.Ct. at 2617. Thus, the district court correctly dismissed the action as to the Chickasaw Nation.

The conclusion that the Tribe is immune from suit does not end our inquiry, however. The state contends that even if the suit against the Tribe is barred, tribal employee Jan Graham is still subject to suit under the doctrine announced in *Tenneco Oil Co. v. Sac & Fox Tribe,* 725 F.2d 572, 574 (10th Cir.1984). We disagree.

■ Tribual officials "do not have the same immunity as the Tribe itself." *Kennerly,* 721 F.2d at 1259 (citing *Mar-*

---

4. After the district court granted the motion to dismiss, the State sought reconsideration on the ground that *Chemehuevi* was later reversed. In *Chemehuevi,* the Ninth Circuit affirmed the district court's dismissal of the state's counterclaim for back taxes against the Chemehuevi tribe. The Supreme Court reversed on other grounds, and the dismissal of the counterclaim was not disturbed by the Ninth Circuit when the case was remanded. *Chemehuevi,* 800 F.2d 1446 (9th Cir.1986).

*tinez*, 436 U.S. at 59, 98 S.Ct. at 1677). But tribal immunity "extends to tribal officials when acting in their official capacity and within the scope of their authority." *United States v. Oregon*, 657 F.2d 1009, 1012 n. 8 (9th Cir.1981). The State cannot avoid the doctrine of sovereign immunity by nominally suing a tribal officer when the suit in substance is against the sovereign. *See Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 687–88, 69 S.Ct. 1457, 1460, 93 L.Ed. 1628 (1949). The State does not contend that Graham was not acting in an official capacity or without authorization by the Tribe.

Nevertheless, in *Tenneco Oil* we recognized that "[w]hen the complaint alleges that the named officer defendants have acted outside the amount of authority that the sovereign is capable of bestowing, an exception to the doctrine of sovereign immunity is invoked." 725 F.2d 574, 576 (McKay, J., concurring). The concurrence in *Tenneco Oil* noted that "[w]ere it not for such an allegation in this case, the sovereign immunity of the tribe would extend to its officers." *Id.* We thus must examine the State's petition and complaint to determine whether employee Graham is immune from suit.

Nowhere in the State's petition is there an allegation that defendant Graham acted outside of the amount of authority that the Tribe is capable of bestowing as a matter of federal or constitutional law. It is well-established that only the Federal Government can limit the scope of tribal sovereignty. The petition only alleges that defendants failed to comply with state law. Thus, the *Tenneco Oil* exception does not apply.

Additionally, the relief sought by the State would operate directly against the Tribe and thus the suit in substance is against it rather than Graham. "The general rule is that a suit is against the sovereign if 'the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration,' ... or if the effect of the judgment would be 'to restrain the Government from acting, or compel it to act.'" *Dugan v. Rank*, 372 U.S. 609, 620, 83 S.Ct. 999, 1006, 10 L.Ed.2d 15 (1963) (citations omitted). The State seeks an accounting of "taxes, penalties, and interest" allegedly due, and seeks to enjoin the operation of the Chickasaw Nation's motel, cigarette sales, and bingo games until payment of the amounts allegedly due. The suit would in effect grant relief against the sovereign itself, "over which the court, in the absence of consent, has no jurisdiction." *Larson*, 337 U.S. at 688, 69 S.Ct. at 1461. Thus, the suit as to Graham is also barred. *Id.*

The judgment of the district court dismissing the suit is AFFIRMED.

TACHA, Circuit Judge, dissenting.

I respectfully dissent. This is not a case about the sovereign immunity of an Indian tribe. This is a case about *who decides* the sovereign immunity of an Indian tribe. In my opinion the majority has incorrectly concluded that a claim of sovereign immunity satisfies the removal jurisdiction requirement that a federal question appear in the plaintiff's well-pleaded complaint. I would find that the federal courts do not have jurisdiction and that this case should not have been removed from state court.

I.

In *Franchise Tax Board v. Construction Laborer's Vacation Trust*, 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983), the Supreme Court held that a suit filed in state court can be removed to federal court only if the suit could have been filed originally in federal court. "If it appears before final judgment that a case was not properly removed, because it was not within the original jurisdiction of the United States district courts, the district court must remand it to the state court from which it was removed." *Id.* at 8, 103 S.Ct. at 2845. Thus, we must decide whether the federal courts would have original jurisdiction over the state's tax suit against the tribe.

Federal question jurisdiction exists only if the plaintiff's well-pleaded complaint establishes that the case arises under federal law. *Id.* at 9–10, 103 S.Ct. at 2846; *see*

*also Metropolitan Life Ins. Co. v. Taylor,* — U.S. ——, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987). It is "settled law that a case may not be removed to federal court on the basis of a federal defense". *Franchise Tax Bd.,* 463 U.S. at 14, 103 S.Ct. at 2848. The *Franchise Tax Board* Court recognized that:

> The [well-pleaded complaint] rule ... may produce awkward results, especially in cases in which neither the obligation created by state law nor the defendant's factual failure to comply are in dispute, and both parties admit that the only question for decision is raised by a federal ... defense. Nevertheless, it has been correctly understood to apply in such situations.

*Id.* at 12, 103 S.Ct. at 2847–48 (footnote omitted).

It is not disputed that the face of the state's complaint in this case raises only state tax questions. The majority, however, finds that the state's attempt "to enforce an essential element of its sovereignty, the power to tax, over an Indian tribe ... underscores the implicit federal question lodged in the state's complaint." Maj. op. at 954. I disagree. This is not a case in which the plaintiff has couched a "necessarily federal cause of action solely in state law terms." 14A C. Wright, A. Miller, & E. Cooper, *Federal Practice & Procedure* § 3722 (1985). There are no questions of federal law in the state's well-pleaded complaint.

"The Constitution vests the Federal Government with exclusive authority over relations with Indian tribes." *Montana v. Blackfeet Tribe of Indians,* 471 U.S. 759, 764, 105 S.Ct. 2399, 2402, 85 L.Ed.2d 753 (1985). Indeed, the Supreme Court has adopted a *per se* rule precluding state taxation of Indian tribes and tribal members. *See California v. Cabazon Band of Mission Indians,* —— U.S. ——, 107 S.Ct. 1083, 1091 n. 17, 94 L.Ed.2d 244 (1987). Congress, however, can authorize a state to tax an Indian tribe if the congressional intention to do so is unmistakably clear. *Montana,* 471 U.S. at 765, 105 S.Ct. at 2403. Thus, the tribe argues that because it is

necessary for the state to rely upon a grant of congressional authority to tax the tribe, the state has raised a federal question in its complaint.

*Gully v. First Nat'l Bank,* 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936), instructs otherwise. In *Gully,* the state of Mississippi filed suit in state court to collect state taxes from a national bank. The lower courts granted the bank's petition to remove the action to federal court because "the power to lay a tax upon the shares of national banks has its origin and measure in the provisions of a federal statute, and that by necessary implication a plaintiff counts upon the statute in suing for the tax." *Id.* at 112, 57 S.Ct. at 97 (citation omitted). The Supreme Court held that removal was improper. Justice Cardozo wrote:

> Not every question of federal law emerging in a suit is proof that a federal law is the basis of the suit. The tax here in controversy if valid as a tax at all, was imposed under the authority of a statute of Mississippi. The federal law did not attempt to impose it or to confer upon the tax collector authority to sue for it. True, the tax, though assessed through the action of the state, must be consistent with the federal statute consenting, subject to restrictions, that such assessments may be made. It must also be consistent with the Constitution of the United States. If there were no federal law permitting the taxation of shares in national banks, a suit to recover such a tax would not be one arising under the Constitution of the United States, though the bank would have the aid of the Constitution when it came to its defense. That there *is* a federal law permitting such taxation does not change the basis of the suit, which is still the statute of the state, though the federal law is evidence to prove the statute valid.

*Id.* at 115, 57 S.Ct. at 99 (emphasis original) (citations omitted).

*Gully* establishes that although a state must rely upon federal authorization to tax a particular institution, a suit to collect such taxes does not necessarily raise a

federal question in the well-pleaded complaint. The majority attempts to distinguish the state tax action in this case from *Gully* by arguing that a waiver of tribal immunity is part of a well-pleaded complaint. Maj. op. at 954. The case relied upon by the majority, *Ramey Construction Co., Inc. v. Apache Tribe of Mescalero,* 673 F.2d 315 (10th Cir.1982), involved an action brought against an Indian tribe in *federal* court.[1] There was no question of removal jurisdiction in *Ramey.* Instead, the only question was the sovereign immunity of the tribe. It is true that the tribe is immune from suit in any court unless it has waived its immunity. Such a waiver must be express and clear; it cannot be implied. *See, e.g., Jicarilla Apache Tribe v. Hodel,* 821 F.2d 537, 539 (10th Cir.1987). It is doubtful that "a tribe can waive its immunity to suit in a state or federal court without congressional authority." F. Cohen, *Handbook of Federal Indian Law* 325 (1982 ed.) But *Gully* makes clear that the need for federal authority to sue a party does not raise a federal question for the purposes of a well-pleaded complaint.

*Ramey* also acknowledged that "[t]he Indian tribes' sovereign immunity is co-extensive with that of the United States." 673 F.2d at 319–20. The determination of federal question removal jurisdiction thus should be the same in cases involving Indian tribes and in cases involving the United States. While federal officials are allowed to remove all suits brought against them to federal court, the basis of removal in those instances is a separate statute rather than a pervasive federal question. 28 U.S.C.

§ 1442 allows for the removal of actions brought in state court against federal officials acting in their official capacity. The right to remove a case from state court in that instance is absolute; removal takes place even if the action could not have been brought originally in federal court. *Willingham v. Morgan,* 395 U.S. 402, 406, 89 S.Ct. 1813, 1815, 23 L.Ed.2d 396 (1969). That Congress found it necessary to enact a special removal statute authorizing federal court jurisdiction in all cases involving federal officials acting in their official capacities implies that the *status* of a federal official is not in itself sufficient to create federal jurisdiction. *See also* 12 U.S.C. § 1819 (the Federal Deposit Insurance Corp. can remove suits brought against it in state court except in specified situations where the FDIC is the receiver of a state bank). There is no such statute conferring federal jurisdiction in all cases in which an Indian tribe is a party.

Suits against foreign sovereigns are treated similarly to suits against federal officials. In *Verlinden B.V. v. Central Bank of Nigeria,* 461 U.S. 480, 103 S.Ct. 1962, 76 L.Ed.2d 81 (1983), a Dutch corporation sued a Nigerian state bank in federal court for breach of contract. The bank moved to dismiss, arguing that the court lacked jurisdiction because of the state bank's sovereign status. The Court held that the Foreign Sovereign Immunities Act, 28 U.S.C. § 1330, expressly provided for suits against foreign sovereigns in federal court. *Id.* at 489–91, 103 S.Ct. at 1969–70. The Court also observed:

Prior to passage of the Foreign Sovereign Immunities Act, which Congress

---

1. *Weeks Construction, Inc. v. Oglala Sioux Housing Authority,* 797 F.2d 668 (8th Cir.1986), another case cited by the majority, actually undermines the position that the presence of an Indian tribe as a defendant creates a federal question. In *Weeks,* a tribal housing authority was sued in federal court. The Eighth Circuit held there was no federal question jurisdiction:

   [T]he fact that the Housing Authority is created by and operates on behalf of an Indian tribe is not alone sufficient to find the existence of a federal question. *See Martinez v. Southern Ute Tribe,* 249 F.2d 915, 917 (10th Cir.1957), *cert. denied,* 356 U.S. 960, 78 S.Ct. 998, 2 L.Ed.2d 1067 (1958) (federal question

   jurisdiction does not exist merely because an Indian is a party or because the suit involves Indian property or contracts). Rather, the rights which Weeks seeks to enforce are based on its construction contract with the Housing Authority, interpretation of which is governed by local, not federal, law. . . . Because Weeks' breach of contract claim does not require interpretation of the validity, construction or effect of federal law, no subject matter jurisdiction over the Housing Authority based on a federal question exists here.

   *Weeks,* 797 F.2d at 672 (footnote omitted). Similarly, the state of Oklahoma's state tax claim does not require a determination of federal law.

clearly intended to govern all actions against foreign sovereigns, state courts on occasion had exercised jurisdiction over suits between foreign plaintiffs and foreign sovereigns.... Congress did not prohibit such actions when it enacted the Foreign Sovereign Immunities Act, but sought to ensure that any action that might be brought against a foreign sovereign in state court could also be brought in or removed to federal court. *Id.* at 491 n. 16, 103 S.Ct. at 1970 n. 16 (citations omitted). Congress has not enacted an equivalent provision that would allow the removal of actions brought against an Indian tribe in state court.

### II.

Tribal sovereign immunity is jurisdictional. *Ramey*, 673 F.2d at 318; *see also* Note, *In Defense of Tribal Sovereign Immunity*, 95 Harv.L.Rev. 1058, 1058 (1982) ("The judicial doctrine of tribal sovereign immunity traditionally has protected Indian tribes from suit in state and federal courts.") (footnotes omitted). The question here is *which court* decides the question of sovereign immunity. *Either* the state court or the federal court must have jurisdiction to decide whether sovereign immunity applies in this case. *See, e.g., Land v. Dollar*, 330 U.S. 731, 739, 67 S.Ct. 1009, 1013, 91 L.Ed. 1209 (1947) (a court has jurisdiction to determine if it has jurisdiction). As the majority properly recognizes, the federal district court did not acquire the threshold jurisdiction to determine the sovereign immunity of the Chickasaw Nation until the court found that removal from state court was proper. Maj. op. at 954, 955. For the reasons I have described, I conclude that removal was improper in this case. Therefore, I would not reach the question of the sovereign immunity of the tribe.

The implication of the majority's position is that federal court removal jurisdiction exists whenever "the defendants are asserting the absence of jurisdiction." Maj. op. at 955. A challenge to state court jurisdiction cannot be sufficient to invoke removal jurisdiction. A federal court obtains removal jurisdiction only when it would have original jurisdiction. Federal law may well determine the result in a state court case, but a showing that a federal question very likely will be dispositive of a case falls short of a showing that the plaintiff's original cause of action arises under federal law.

### III.

This court must afford "proper respect for the ability of state courts to resolve federal questions presented in state court litigation." *Pennzoil Co. v. Texaco, Inc.*, — U.S. ——, 107 S.Ct. 1519, 1527, 95 L.Ed.2d 1 (1987). The state court is constitutionally obligated to follow the commands of federal law regarding Indian tribal sovereignty. Should the state court fail to do so, the Supreme Court can review that decision on appeal. *See Franchise Tax Bd.*, 463 U.S. at 12 n. 12, 103 S.Ct. at 2848 n. 12.

Because the state of Oklahoma's complaint in this case does not raise a federal question, there would be no original jurisdiction in the federal courts, and thus there is no removal jurisdiction. I would hold that this action was improperly removed to federal court and that it should now be remanded to state court.